# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| TEDKIEYA MCFADDEN | : | No. 15-376-4 |

## MEMORANDUM

PRATTER, J.                                                        NOVEMBER _29_, 2021

    Tedkieya McFadden is currently serving a 188-month sentence and seeks to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Ms. McFadden argues that relief is warranted based on ineffective assistance of counsel and prosecutorial misconduct.[1] The Government opposes the motion. Ms. McFadden also requests the appointment of counsel. For the following reasons, the Court will deny Ms. McFadden's *pro se* § 2255 motion and request for the appointment of counsel.

## BACKGROUND

    Ms. McFadden participated in a conspiracy to bring large quantities of cocaine and marijuana to the Philadelphia area from 2009 to 2015. In May 2016, Ms. McFadden and eight co-defendants, including three of her brothers, were charged with drug offenses in a 12-count superseding indictment. Ms. McFadden was charged with the following counts: conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); distribution

---

[1] After Ms. McFadden filed her initial § 2255 motion on an incorrect form, Doc. No. 689, and then her mother filed a motion on the correct form, Doc. No. 697, the Court ordered the Clerk of Court to provide Ms. McFadden with the current standard form and instructed her to complete, sign, and return the new form herself. Ms. McFadden did so, but did not attach the memorandum of law that she had included with her initial motion. Because Ms. McFadden references this memorandum in her most recent § 2255 motion (under the supporting facts section of each ground for relief, Ms. McFadden states "See accompanied typewritten motion"), and because the Government responded to Ms. McFadden's arguments in the memorandum, the Court considers Ms. McFadden's memorandum as if it were also attached to her most recent motion.

1

of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D) (Count Nine); possession with intent to distribute 500 grams of more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Eleven); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Twelve). Ms. McFadden was represented by Paul J. Hetznecker.

In March 2017, pursuant to a written plea agreement, Ms. McFadden pled guilty to all counts. The agreement acknowledged, among other things, that Count One carried a 20-year mandatory minimum sentence based on the 21 U.S.C. § 851 Information filed by the Government. Doc. No. 333 ¶ 4. The § 851 Information called for the mandatory minimum sentence based on her 2001 federal drug-related felony conviction. Doc. No. 99 ¶ 1. The agreement signed by Ms. McFadden also stated that she was "satisfied with the legal representation provided by [her] lawyer" and that she was "agreeing to plead guilty because [she] admits that she is guilty." *Id.* ¶ 15. Further, the agreement provided that, in exchange for the benefit she was receiving under the agreement, Ms. McFadden was waiving her right to challenge her sentence on appeal or collateral review (with some limited exceptions). *Id.* ¶ 11. This was confirmed expressly by the Court during the plea hearing while Ms. McFadden was under oath. Mar. 8, 2017 H'rng Tr. at 32:5–33:14; 54:14–16 (repeating same).

After Ms. McFadden's guilty plea, she also entered into a Sentencing Agreement with the Government through which the Government agreed to withdraw the § 851 Information regarding her prior conviction to remove the mandatory minimum of 240 months in exchange for the parties agreeing to a sentence range of 188 to 235 months, subject to the Court's approval. Doc. No. 564 ¶ 3. Ms. McFadden again agreed to waive her right to any "appeal or collateral attack" with limited exceptions, in exchange for the Government withdrawing the Information. *Id.* ¶ 5.

In September 2018, the Court sentenced Ms. McFadden to 188 months of imprisonment to be followed by 5 years of supervised release, and a special assessment of $400.  Ms. McFadden filed an appeal, which the Government opposed through a motion to enforce the appellate waiver. Ms. McFadden then filed a Motion to Correct Sentence under Rule 59(c), which the Court of Appeals construed as a response to the Government's motion to enforce the appellate waiver.  In her motion/response, Ms. McFadden argued that the Court inappropriately allocated one criminal history point for her simple assault and reckless endangerment charge because it was on appeal and had since been dismissed, among other challenges to the sentence length.  Motion to Correct Sentence under Rule 59(c), *United States v. McFadden*, No. 18-3304 (3d Cir. June 24, 2019).  The Court of Appeals enforced the appellate waiver, denying Ms. McFadden's appeal and Rule 59(c) motion.  Order, *United States v. McFadden*, No. 18-3304 (3d Cir. August 2, 2019).

In November 2019, Ms. McFadden filed a § 2255 motion on incorrect forms.  Then her mother filed another motion on the correct form for her in January 2020.  Pursuant to this Court's order, Ms. McFadden refiled her motion herself on the corrected forms in April 2021.[2]  In the most recent filing, Ms. McFadden also requests that the Court incorporate "all her motions" including her "Motion to Correct Sentence Under Rule 59(c)."  Doc. No. 796, at 4. Ms. McFadden asks the Court to vacate her conviction or, in the alternative, grant an evidentiary hearing.  Doc. No. 796, at 12; Doc. No. 697, at 14.

### LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct her sentence on the basis that the sentence was "imposed in violation of the Constitution or laws of the United States,

---

[2] The Government filed its response in opposition in March 2020.  Doc. No. 708. The Government has indicated that it would like to rely on its previously filed response.  Ms. McFadden filed her reply to the Government's response in May 2020.  Doc. No. 720.

or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner may only prevail on a § 2255 habeas claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

A petitioner who did not raise an objection at trial must show either (1) actual innocence or (2) "cause" excusing her procedural default and "'actual prejudice' resulting from the errors of which [s]he complains." *United States v. Frady*, 456 U.S. 152, 168–70 (1982); *see also Parkin v. United States*, 565 F. App'x 149, 151 (3d Cir. 2014) (non-precedential) ("[W]here a defendant has failed to raise a claim on direct review, the claim may be raised in habeas only if the defendant can demonstrate either cause and prejudice, or actual innocence.").

Ineffective assistance of counsel may provide the cause necessary to overcome a procedural default. *Hodge v. United States*, 554 F.3d 372, 378–79 (3d Cir. 2009). In *Strickland v. Washington*, the United States Supreme Court established a two-pronged test for reviewing claims for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). "A petitioner must prove both (1) that 'counsel's representation fell below an objective standard of reasonableness' and (2) that petitioner was prejudiced by that subpar performance." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 544 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). To establish prejudice for the purposes of an ineffective assistance of counsel claim, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). In the context of guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show

that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Under § 2255, "the District Court [is] required to grant an evidentiary hearing unless the record before it 'conclusively show[s]' that [the petitioner] was not prejudiced" by her counsel's assistance. *United States v. McCoy*, 410 F.3d 124, 132 (3d Cir. 2005). When considering whether to hold an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The Third Circuit Court of Appeals has "instructed district 'courts [to] focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim.'" *Morris v. Beard*, 633 F.3d 185, 196 (3d Cir. 2011) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000)). In other words, the petitioner must "make a '*prima facie* showing' that 'would enable h[er] to prevail on the merits of the asserted claim.'" *Id.* at 196 (quoting *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010)).

Ms. McFadden has filed her § 2255 petition *pro se*. "The court is to construe a prisoner's *pro se* pleading liberally." *United States v. Sotomayor*, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015) (citation omitted).

## DISCUSSION

Ms. McFadden raises four claims for ineffective assistance of counsel in her motion. Ms. McFadden challenges her counsel's alleged failure to 1) conduct an adequate pre-trial investigation; 2) notify the Court of an alleged conflict of interest; 3) advise Ms. McFadden as to two conspiracy-related legal issues; and 4) object to certain sentencing calculations.[3]

---

[3] The Court notes that Ms. McFadden raises many of the same arguments as her brother, Tyron McFadden, raised in his own § 2255 petition. In fact, many of the paragraphs appear to be copied verbatim from Mr.

Ms. McFadden also raises a claim of prosecutorial misconduct based on the conflict of interest issue and attempts to revisit her Rule 59(c) motion. The Court will discuss each claim in turn.

## I.   Pre-Trial Investigation

First, Ms. McFadden alleges that her counsel failed to conduct an adequate pre-trial investigation. Ms. McFadden asserts that her counsel demonstrated an "appalling failure to make sufficient efforts to adequately investigate and prepare for certain issues directly related to defendant's defense prior to and after defendant plead guilty." Doc. No. 689, at 2. In particular, she cites her attorney's "refusal to get funds to get a paid investigator from [her] family or from the courts . . . ." *Id.* at 3. Ms. McFadden complains that her counsel did not hire a private investigator to "interview potential witnesses, obtain possible evidence and assist in other ways" despite the fact that she "tried to get her attorney an investigator" for this purpose. *Id.*

"For a failure to investigate to constitute ineffective assistance, a defendant must show what exculpatory evidence would have been uncovered by further investigation." *United States v. Williams*, 166 F. Supp. 2d 286, 306 (E.D. Pa. 2001). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990) (quoting *Strickland*, 466 U.S. at 694).

Ms. McFadden does not explain how this alleged failure affected the outcome of her case. She asserts that "[h]ad her counsel made sufficient efforts to effectively represent Ms. McFadden, he would have had significant opportunities to severely weaken the Government's case and offer a strong viable defense or [a] better plea deal." Doc. No. 689, at 4. She does not provide specifics,

---

McFadden's petition, including challenges to the effectiveness of "his" (rather than "her") counsel. *Compare* Doc. No. 697, at 17, *with* Doc. No. 720, at 2. In some instances, the arguments do not appear applicable to Ms. McFadden. The Court notes in this Memorandum where such issues arise.

arguing generally that the "failure to even retain an investigator to interview potential witnesses, obtain possible evidence and assist in other ways should be viewed by the court as persuasive evidence that counsel conducted no investigation prior to" her guilty plea.  Doc. No. 689, at 3. Ms. McFadden does not identify any exculpatory information that would have been uncovered through use of a private investigator.[4] *See Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001) (no prejudice where petitioner offered no evidence of what witness would have said if interviewed).

In addition to a private investigator, Ms. McFadden argues that her counsel should have retained "an expert in electronic[s] or phone experts to challenge the admissibility of many of the government's key pieces of evidence."  Doc. No. 689, at 3.  Again, Ms. McFadden offers no explanation of what evidence should have been considered inadmissible and why.  Because she pled guilty, there was no trial at which the evidence was offered or an opportunity for such an expert to testify.  To the extent that Ms. McFadden believes such an expert could "offer a strong viable defense" based on the entrapment allegations discussed *infra*, she identifies no facts that would make the entrapment defense viable.[5]  She also does not explain how such an expert would be relevant in the absence of a trial; she does not, for example, allege that she would not have pled guilty had such an expert been retained and prepared for trial.

---

[4] Ms. McFadden does assert that "[h]ad [her] lawyer d[one] his investigation, he would not have allowed me to plead out to this case knowing that the government [confidential informant] was double dipping from the first day they let him back out on the streets to entrap myself and my co-defendants."  Doc. No. 720, at 8.  However, for the reasons discussed *infra*, Section III.B, the entrapment defense would not have been successful, so this allegation does not provide a basis for establishing prejudice.  The government informants' alleged "double dipping" is not relevant to Ms. McFadden's conviction.

[5] Notably, Ms. McFadden does not aver that she was unaware of who had previously served as government informants at the time of her plea bargain.  To the extent the proposed testimony of government informants motivated her decision to enter a guilty plea, a private investigator was not necessary to uncover these facts prior to her plea bargain or her on-the-record embrace of the plea agreement.

Therefore, Ms. McFadden's allegations regarding the adequacy of the pre-trial investigation fail to establish the required prejudice for an ineffective assistance of counsel claim.

## II.     Conflict of Interest

Next, Ms. McFadden argues that her counsel failed to disclose conflicts of interest based on his prior representation of her co-defendant and brother, Talli McFadden. For purposes of this motion, the Court assumes that Ms. McFadden's allegations are true. As Ms. McFadden observes, her family and friends present a "sordid history" of interrelated criminal activity and family attorneys representing her siblings on assorted charges. Doc. No. 689, at 6.

Specifically, Ms. McFadden asserts that Mr. Hetznecker had previously represented Talli McFadden on three occasions, although she describes only two: federal charges in 2007 unrelated to the instant case and state drug charges in 2014 related to the activity at issue in this case.[6] *Id.* at 3, 5. Ms. McFadden also asserts that 1) some of her past attorneys represented her co-defendants in this case, 2) that past attorneys for her co-defendants represented other co-defendants (but not her) in this case, and 3) that one attorney, Mr. Madden, represented a government informant while giving her "advice for [her] brother Tyron McFadden." *Id.* at 4–5; Doc. No. 720, at 1. She further argues that Mr. Hetznecker, the other prior attorneys, and the Government failed to disclose this information to the Court. Doc. No. 689, at 3.

The Court finds that Ms. McFadden has not alleged prejudice sufficient to establish an ineffective assistance of counsel claim as to either her claims based on a conflict of interest or prosecutorial misconduct. The Court addresses each in turn.

---

[6] Mr. Hetznecker did not represent Talli McFadden in this case. Mr. McFadden's counsel of record in the instant case were Caroline A. Goldner Cinquanto (CJA appointment), Christopher D. Warren, Susan Buck, and Dennis J. Cogan (terminated Oct. 16, 2019).

### A. Actual Conflict

The Court first notes that representation of co-defendants by counsel previously retained by Ms. McFadden in other matters, representation of co-defendants by other co-defendants' former counsel, and Mr. Madden giving Ms. McFadden advice "for" her brother are not relevant to an actual conflict of interest infecting the drug-distribution related charges against Ms. McFadden. Ms. McFadden does not assert any theory on which the Court could find that attorneys who did not represent her in this plea deal caused prejudice.

Ms. McFadden primarily argues that Mr. Hetznecker's prior representation of Talli McFadden created an actual conflict of interest. Doc. No. 689, at 5. An actual conflict is one that "actually affected the adequacy of [petitioner's] representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980). "'[A]n actual conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). "An actual conflict of interest is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (internal quotation marks omitted).

Multiple representation does not automatically establish an actual conflict of interest. *See Cuyler*, 446 U.S. at 348. "[A]n actual conflict is more likely to occur in cases of joint representation—representation of more than one defendant at the same trial—rather than simply multiple representation—representation of defendants in different trials." *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999); *see also Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988) ("Generally, it is more difficult to show an actual conflict resulting from successive rather than simultaneous representation."). The Supreme Court has noted that "the Federal Rules of Criminal

Procedure treat concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney (Rule 44(c)), but not when counsel previously represented another defendant in a substantially related matter, even where the trial court is aware of the prior representation." *Mickens*, 535 U.S. at 175. The Third Circuit Court of Appeals has established a standard for determining whether "cases involving multiple but not joint representation" present an actual conflict:

> In order to establish an actual conflict the petitioner must show two elements. First, [s]he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. [S]he need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, [s]he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*Morelli*, 169 F.3d at 810 (quoting *Gambino*, 864 F.2d at 1070).

For example, in *Morris v. Beard*, 633 F.3d 185 (3d Cir. 2011), the defendant's counsel also represented his brother, another suspect for the same murder, in an unrelated civil matter. Notably, witnesses had actually identified the brother as the shooter, the defendant's counsel failed to investigate the defendant's asserted alibi, and the defendant's counsel stood to benefit financially from the brother's civil matter seeking monetary damages. *Id.* at 189. The Third Circuit Court of Appeals upheld the district court's decision to hold an evidentiary hearing based on this prima facie case of an inherent conflict, but remanded for an additional hearing to determine "critical issues of material fact [that] remain as to whether the alternative strategy of blaming [the brother] for the shooting was plausible under the circumstances" because the attorney suggested that the defendant "would not have allowed him to portray [the brother] as the shooter at trial." *Id.* at 197, 199.

Ms. McFadden does not allude to any alternative defense strategy or tactic that counsel did not pursue and that "inherently" conflicted with her counsel's purported loyalty to her brother, Talli McFadden.  In discussing divided loyalty, Ms. McFadden points to other attorneys who represented other co-defendants, but not her.  Doc. No. 689, at 7; Doc. No. 720, at 4–5.  She maintains that the other attorneys "put her at a disadvantage in obtaining fair representation because her lawyers had divided loyalties."  Doc. No. 689, at 7.  For example, she alleges that she paid an attorney named Mr. Cogan to represent Talli McFadden in 2011 and then Mr. Cogan represented a government informant in this case.  *Id.*[7]  However, none of the lawyers she names besides Mr. Hetznecker actually represented her in this case.

As to Mr. Hetznecker, Ms. McFadden alleges in her reply brief that he "knew he could not call Talli J. McFadden because [Mr.] Hetznecker knew pertinent events.  He knew [] calling Mr. McFadden would have made him a witness to relevant events, to things that [Mr. Heztnecker] and Mr. McFadden had discussed in 2014, about this case and other things."  Doc. No. 720, at 4.  Ms. McFadden cites several cases on attorney disqualification as witnesses to relevant events and involvement in the underlying conduct in the case.  However, Ms. McFadden does not allege that Mr. Heztnecker actually witnessed or was otherwise involved in the drug distribution conspiracy for which she pled guilty.  Rather, she seems to argue that Mr. Hetznecker's role as Mr. McFadden's counsel on the related state drug charges meant that the attorney-client conversations rendered him a "witness" about some of the underlying facts.  *Id.* at 4 ("[T]he law firm's active participation in the matter at [issue] in this case make[s] its attorneys witnesses to numerous

---

[7]  Ms. McFadden also separately raises the point that she has at times paid her brother Talli McFadden's legal fees.  Doc. No. 720, at 5–6.  She cites the Pennsylvania Rules of Professional Conduct to argue that Mr. Cogan, her brother's attorney at the time, should not have accepted this compensation from a third party.  *Id.*  The Court does not view this argument as relevant to her ineffective assistance of counsel challenges to the instant drug-related conviction.

pertinent events."). This is incorrect. Mr. Hetznecker's conversations with Talli McFadden as his counsel would typically be protected by attorney-client privilege. Moreover, even if an exception applied, Mr. Hetznecker would have only been able to offer inadmissible hearsay through his secondhand account of what Mr. McFadden told him. Prior representation does not render an attorney a witness to the underlying events.

Ms. McFadden also asserts that "had [she] known that Talli J. McFadden could have been a government witness against petitioner in this case, petitioner would not have hired attorney Paul Hetznecker as counsel . . . ." Doc. No. 720, at 2. However, it is possible that *any* co-conspirator could have become a witness for the Government. Ms. McFadden does not allege that Mr. Hetznecker presented any sort of divided loyalties related to his former client potentially acting as a government witness, or, more generally, how Mr. McFadden's status had anything to do with the quality of her counsel's representation in the instant case. Merely lamenting the decision to hire Mr. Hetznecker does not establish prejudice.

In addition, Ms. McFadden generally alleges that "counsel's inaction in the face of an actual conflict" harmed her by denying "her right to a fair trial," Doc. No. 689, at 8, and that she "didn't benefit anything and the only people benefit[t]ed were the lawyers and the Government," *id.* at 5. But Ms. McFadden does not maintain that she would have gone to trial but for the ineffective assistance of counsel. *See Hill*, 474 U.S. at 59. Nor does Ms. McFadden explain how either the lawyers or the Government benefitted from the alleged conflict. Unlike *Morris*, Ms. McFadden does not provide a basis on which this Court could infer that her counsel stood to benefit financially or reputationally from loyalty to another client. Ms. McFadden has not alleged any prejudice.

Ms. McFadden does argue that her attorney would not have been able to cross-examine her brother Talli McFadden at trial. However, this also does not establish prejudice because Ms. McFadden pled guilty before trial. Further, unlike *Morris*, where the defendant and his brother were suspects for the same murder, Ms. McFadden does not assert that any of her co-defendants benefitted from her own guilty plea. Indeed, she pled guilty to a conspiracy that actually implicated her siblings. Ms. McFadden asserts no basis upon which this Court could find that a potential conflict adversely affected her right to effective assistance of counsel.

A petitioner that fails to establish prejudice for the purposes of an actual conflict also fails to establish prejudice under the second prong of the *Strickland* standard for ineffective assistance of counsel claims. *See United States v. Parr*, 1993 WL 311765, at *3 (E.D. Pa. Aug. 9, 1993), *aff'd*, 22 F.3d 304 (3d Cir. 1994) ("A conflict of interest must be 'actual' and not 'potential' or 'hypothetical,' to warrant post-conviction relief" under *Strickland*.) (citing *Cuyler*, 446 U.S. at 335). While Ms. McFadden has raised a potential conflict based on prior representation, the Court finds that Ms. McFadden has failed to establish a prima facie case of an actual conflict. Therefore, the Court rejects Ms. McFadden's ineffective assistance of counsel claim on the basis of potential conflicts of interest.

## B. Prosecutorial Misconduct

Ms. McFadden also asserts that the Government knew about her counsel's prior representation of Talli McFadden and failed to disclose this issue to the Court. As noted above, this Court assumes that this allegation is true for the purposes of this motion.[8] "The Supreme

---

[8] Although Ms. McFadden does not raise it in her reply, the Court notes that the Assistant U.S. Attorney representing the Government in this case became a United States District Judge for the Eastern District of Pennsylvania after the McFadden proceedings at issue. In light of the Court's duty to assess its own potential conflicts, the Court has done so and finds that recusal in favor of reassignment to another federal district court is not warranted to resolve the purely legal question raised in Ms. McFadden's prosecutorial misconduct claim, given this late stage in the proceedings and, of greater import, because of the lack of

Court has held that prosecutorial misconduct is insufficient to overturn a conviction unless it 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Where the conviction is based on a guilty plea, the Court must consider whether the defendant voluntarily pled guilty based on adequate notice of the offense to which she pleaded guilty.  *Henderson v. Morgan*, 426 U.S. 637, 646–47 (1976).

Both defense attorneys and prosecutors have an ethical obligation to disclose potential conflicts to the court.  *Morris*, 633 F.3d at 189 n.2.  However, as the Supreme Court noted in *Mickens v. Taylor*, "the Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently," requiring courts to affirmatively raise and discuss potential conflicts only in the case of joint representation in the same case.  535 U.S. at 175.  Indeed, the cases cited by Ms. McFadden, *see* Doc. No. 689, at 5–6, involve either concurrent representation (as opposed to prior representation) or an attorney whose conflict stems from their own self-preservation interest because they are personally implicated in the charges.  *See United States v. Carr*, 322 F. Supp. 3d 612, 620 (E.D. Pa. 2018) (finding that "there is a serious potential conflict of interest created by [counsel's] concurrent representation of Carr and Client No. 1"); *United States v. Lacerda*, 929 F. Supp. 2d 349, 358 (D.N.J. 2013) (noting counsel's conflict "placing her personal interest in self-preservation in direct juxtaposition to his client's interest in loyal and unbiased representation" where counsel also "faces a serious potential conflict because he legitimately may be called as a witness").

---

merit of the argument. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001) ("We also believe that there must be a more compelling standard for recusal under § 455(a) after the conclusion of a trial than before its inception.").

In contrast to concurrent representation, the failure to disclose a potential conflict based on prior representation is not a ground for reversing a conviction or vacating a sentence. *Morelli*, 169 F.3d at 812 ("[W]e do not hold, that a prosecutor's—or a defense attorney's—failure in this respect is grounds for reversal. Since [the petitioner] makes no claim that the District Court was or should have been aware of [counsel's] potential conflict, he is not entitled to a reversal on these grounds."); *see also Mickens*, 535 U.S. at 170–72 (noting that *Cuyler* requires petitioners to establish an actual conflict even if the alleged conflict was not disclosed during trial proceedings).

Ms. McFadden must show "'actual prejudice' resulting from the errors of which [s]he complains." *Frady*, 456 U.S. at 168. Ms. McFadden does not assert any factual basis for the Court to conclude that failure to disclose her counsel's prior representation of her brother "infected" her plea bargain. *See Reid*, 420 F. App'x at 159. Rather the opposite: the Government entered into an unconventional Sentencing Agreement after the plea bargain, withdrawing the § 851 Information so that Ms. McFadden could avoid the mandatory minimum sentence. Because Ms. McFadden does not show actual prejudice, the Court finds that her claim of prosecutorial misconduct for failure to disclose a potential conflict does not establish a basis for habeas relief.

## III.    Strategic Errors

Ms. McFadden also raises ineffective assistance of counsel claims based on purported strategic errors. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). This is because "trial counsel could not have been ineffective under *Strickland* for failing to raise it." *Waller v. Varano*, 562 F. App'x 91, 95 (3d Cir. 2014).

Ms. McFadden asserts that her counsel should have pursued the theory that she was not guilty of conspiracy because her agreements included a confidential informant and that counsel

refused to consider an entrapment defense. However, each of Ms. McFadden's arguments fails because they would have been meritless even if Ms. McFadden's counsel had pursued them.

## A. Conspiracy Involving Confidential Informants

First, Ms. McFadden raises the government informant *Sears* rule exception to a conspiracy without explaining its relevance to her habeas petition. She states that "a confidential informant cannot be a co-conspirator in order to prove a conspiracy." Doc. No. 689, at 4. Ms. McFadden alleges that, at some point, Richard Robinson, Theodore McFadden, and Namie Williams became confidential informants. *Id.* at 4–5.

Because Ms. McFadden waived her right to a direct appeal and did not raise this basis on such a direct appeal as required to avoid a procedural default (e.g., a sufficiency of the evidence challenge), the Court construes the *Sears* rule argument as part of her ineffective assistance of counsel claim. However, Ms. McFadden does not assert that her counsel gave her contrary advice or what role this issue played in her plea bargain. Even if counsel did incorrectly tell Ms. McFadden that the Government could have established a conspiracy based only on an agreement with a confidential informant, there cannot be prejudice because Ms. McFadden pled guilty to a conspiracy involving multiple people besides the purported informants. A defense under the *Sears* rule requires showing that the *only* co-conspirator was a government agent because "it takes two to conspire." *United States v. Sears*, 343 F.2d 139, 142 (5th Cir. 1965); *see also United States v. Garner*, 915 F.3d 167, 170 (3d Cir. 2019) ("merely conspiring with . . . a government informant, would not make [the defendant] criminally liable"). The *Sears* rule recognizes that there cannot be a conspiracy where there is only one person with criminal intent. However, Ms. McFadden pled guilty to a conspiracy involving many people other than the three alleged informants. *See e.g.*, Doc. No. 176 ¶¶ 11–12. Even if the three informants were in fact government informants the

16

entire length of the conspiracy to which Ms. McFadden pled guilty, the *Sears* rule would not be applicable because the others could still engage in a conspiracy. Because Ms. McFadden pled guilty to conspiring with others in addition to the purported government informants, the *Sears* rule argument is meritless. And because such a defense would be meritless, her counsel was not deficient for declining to pursue it.

**B. Entrapment Defense**

Additionally, Ms. McFadden argues that her counsel improperly refused to consider raising an entrapment defense. She also alleges that her counsel should have "filed a pre-*Booker* variance on [her] behalf under 2G1.3(C) for sentence manipulation." Doc. No. 689, at 4.[9] Again, Ms. McFadden's argument fails for several reasons.

First, Ms. McFadden appears to make a "sentencing entrapment" argument, which "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so, and the result is a higher sentence." *United States v. Sed*, 601 F.3d 224, 230 (3d Cir. 2010) (internal quotation marks omitted). "A defendant asserting sentencing entrapment argues that, although predisposed to commit a minor or lesser offense, he has been entrapped into committing a greater offense subject to greater punishment." *United States v. Moffitt*, 797 F. App'x 708, 713 (3d Cir. 2020) (internal quotation marks omitted). Fatal to Ms. McFadden's argument, however, is the fact that "[n]either the Supreme Court nor the Third Circuit has yet endorsed a sentencing entrapment defense." *Id.*; *see also United States v. Baird*, No. 20-2262, 2021 WL 3612161, at *2 (3d Cir. Aug. 16, 2021) ("While our sister courts of appeals are split on the validity of sentencing entrapment and manipulation, this Court has 'neither adopted nor rejected the[se] doctrines.'") (quoting *Sed*, 601 F.3d at 229). It would not be unreasonable for

---

[9] As the Government correctly points out, "Sentencing Guideline 2G1.3 concerns sex trafficking offense[s] and has no applicability to McFadden's sentence." Doc. No. 708, at 28.

counsel to reject a sentencing entrapment argument that has not been accepted by either the Third

Circuit Court of Appeals or the Supreme Court. To the extent Ms. McFadden seeks to assert some

other form of sentence manipulation, she has alleged no facts to support such a claim.[10]

In addition to failing to establish that her counsel's conduct was unreasonable, Ms.

McFadden fails to establish prejudice. The Court could infer that Ms. McFadden would not have

pled guilty if she thought she could pursue an entrapment defense at trial. However, Ms.

McFadden's allegations focus on Mr. Robinson's alleged violations of his informant contract with

the Government and she questions why he was allowed to continue operating as an informant while

conducting illegal activities. Doc. No. 689, at 4. Ms. McFadden's allegations that Mr. Robinson

breached his own contract with the Government by "double dipping" do not support a theory of

entrapment of Ms. McFadden, sentencing-based or otherwise.

Courts have also noted that an entrapment defense tends to be harmful in the context of

plea bargain negotiations. Pursuing the entrapment argument at sentencing "increas[es] the

potential for a higher sentence than Petitioner received by counsel focusing on [her] acceptance of

responsibility . . . ." *Kelley v. United States*, No. 19-cv-4926, 2021 WL 3080945, at \*4 (D.N.J.

July 21, 2021). Blaming an alleged government informant for entrapment would be strategically

inconsistent with demonstrating acceptance of responsibility for her offense. *See United States v.

Jackson*, 827 F. App'x 209, 212 (3d Cir. 2020) ("Ordinarily a claim of entrapment at trial seems

to be the antithesis of the acceptance of responsibility.") (quoting *United States v. Demes*, 941 F.2d

220, 222 (3d Cir. 1991)). "[S]trategic choices about which lines of defense to pursue are owed

---

[10] Ms. McFadden's argument regarding entrapment mirrors that of her brother Tyron McFadden's habeas brief. Unlike her brother, Ms. McFadden does not actually allege facts to support a sentencing entrapment theory such as a government informant urging her to agree to provide higher-sentence level drugs.

deference commensurate with the reasonableness of the professional judgments on which they are based." *Strickland*, 466 U.S. at 681.

Here, Ms. McFadden and the Government "agree[d] and stipulate[d] that, as of the date of [the plea] agreement, the defendant has demonstrated acceptance of responsibility for her offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3El.l(a)." Doc. No. 333 ¶ 10(c). Thus, Ms. McFadden also fails to establish prejudice—or otherwise indicate a division of loyalties for conflict-of-interest purposes—because Ms. McFadden's alternate theory of the case might have actually *increased* her sentence. A reasonable, unbiased attorney could strategically focus on an acceptance-of-responsibility sentencing reduction—particularly where an entrapment defense is far from guaranteed to succeed. Therefore, an entrapment defense does not provide a basis for Ms. McFadden's ineffective assistance of counsel claim.

## IV.   Sentencing Calculations and Rule 59(c) Motion

Lastly, Ms. McFadden asserts that her counsel failed to object to errors in her sentencing calculations. Ms. McFadden challenges a criminal history point based on a prior state conviction for simple assault and recklessly endangering another person, Doc. No. 689, at 6, and her 120-month sentence for Count Nine.

First, Ms. McFadden argues that the criminal history point for her state conviction, which was on appeal at the time of her sentencing, should be removed because her state conviction has since been overturned. *Id.* The Government responds that Ms. McFadden made the same argument in her Rule 59(c) motion, which the Third Circuit Court of Appeals rejected based on

her appellate waiver. Doc. No. 708, at 28. Ms. McFadden seeks to "incorporate" her Rule 59(c) motion into this appeal. Doc. No. 796, at 4.

The Government is correct that the Third Circuit Court of Appeals has already denied Ms. McFadden's Rule 59(c) motion based on her appellate waiver. The Government correctly argued that the appellate waiver was designed to preclude precisely the kind of ordinary sentencing error alleged by Ms. McFadden. Doc. No. 710, at 12. Further, the challenged point is irrelevant because the Sentencing Agreement departed downward from the mandatory minimum she would have otherwise faced. Importantly, the mandatory minimum avoided by the Sentencing Agreement exceeded the sentencing guidelines range even with the challenged sentencing point, Sept. 27, 2018 H'rng Tr. at 19:8–21, and the mandatory minimum was itself based on Ms. McFadden's prior federal drug felony conviction, not the state conviction reversed on appeal, Doc. No. 99 ¶ 1.

For the purposes of her ineffective assistance counsel claim, Ms. McFadden fails to mention that Mr. Hetznecker did in fact raise the point that her state conviction was on appeal at her sentencing hearing. Sept. 27, 2018 H'rng Tr. at 19:8–21. In fact, the Pre-Sentencing Report notes that "Defense counsel argues this [state] case is still open and should not be scored as a conviction as the disposition is still pending under appeal." Doc. No. 710, at 106 n.18. However, counsel agreed that the Sentencing Agreement rendered this issue irrelevant because the appeal status had no "impact on the [sentencing] agreement" between the parties. Sept. 27, 2018 H'rng Tr. at 19:22–20:5. Therefore, Ms. McFadden fails to show prejudice for purposes of her ineffective assistance of counsel claim. The Court also declines to revive her unmeritorious Rule 59(c) motion filed before the Court of Appeals.

In her reply brief, Ms. McFadden next challenges her 120-month sentence for Count Nine, asserting that the statutory maximum is five years. Doc. No. 720, at 9. However, the statutory

provision underlying Count Nine extends the five-year statutory maximum to ten years if the defendant has a prior felony drug conviction. *See* 21 U.S.C. § 841(b)(1)(D) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years."). Ms. McFadden appears to argue that, because the Government withdrew the § 851 Information regarding her prior drug-related felony, this mandatory minimum should not apply. Doc. No. 720, at 9. Yet, as noted above, Ms. McFadden has waived her ability to appeal this sentence. To the extent that Ms. McFadden intends to frame this argument as an ineffective assistance of counsel claim, she cannot show prejudice because her terms for Counts One, Nine, Eleven, and Twelve run concurrently, with Count Nine as the shortest of the concurrent sentences. *See* Doc. No. 563, at 2. If counsel sought to shorten the 120-month sentence, this would not affect her longer, concurrent sentence of 188 months. *See Parkin v. United States*, 565 F. App'x 149, 153 (3d Cir. 2014) (explaining that "the concurrent sentence doctrine . . . may appropriately be applied when the alleged error is associated only with counts for which concurrent sentences are imposed and the other sentences are unassailable") (quoting *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986)).

Therefore, Ms. McFadden's challenges to her sentence term of 188 months do not provide a basis for relief.

## V.    Appointment of Counsel

Ms. McFadden also filed a motion for the appointment of counsel. Doc. No. 690. While indigent civil litigants have no constitutional or statutory right to appointed counsel, a district court has the authority to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498–99 (3d

Cir. 2002). Here, for the reasons discussed above, Ms. McFadden's habeas and sentencing-related motions do not have arguable merit.[11] The Court finds appointment of counsel inappropriate and will deny Ms. McFadden's request.

## CONCLUSION

For the foregoing reasons, the Court denies Ms. McFadden's motion to vacate, set aside, or correct her sentence under § 2255. Ms. McFadden asserts no "factual allegations, which, if true, would entitle h[er] to federal habeas relief." *Schriro*, 550 U.S. at 474. Because the record conclusively shows that she was not prejudiced by her counsel's assistance or other alleged errors, the Court denies Ms. McFadden's request for an evidentiary hearing. The Court also denies Ms. McFadden's request for appointment of counsel.

When issuing a final order denying a § 2255 motion, the Court must also determine whether a certificate of appealability should issue. 28 U.S.C. § 2253(c)(2). Because the Court finds that Ms. McFadden has not demonstrated a substantial denial of a constitutional right, a certificate will not issue. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[11] Even if Ms. McFadden's claims did have merit, the Court finds that the *Tabron* factors would not weigh in Ms. McFadden's favor. *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993). Her claims do not present particularly difficult legal issues, do not turn on credibility determinations, and do not require testimony from expert witnesses.